## WOOTTON v. MAGONE.

(Circuit Court, S. D. New York. November 17, 1892.)

CUSTOMS DUTIES—ASPHALT MASTIC—CLASSIFICATION UNDER THE TARIFF ACT OF MARCH 3, 1883.

Asphalt mastic, an article produced by crushing an asphaltum mined or quarried in rough chunks, often called "rock," and by melting and mixing together such crushed asphaltum and a natural mineral bitumen gathered in the island of Trinidad or elsewhere, and by afterwards casting for transportation the mixture so obtained in molds into loaves or cakes, is not

free of duty as crude asphaltum, under the provision for "asphaltum and bitumen, crude," contained in the free list (Tariff Ind., New, par. 643) of the tariff act of March 3, 1883, (22 U. S. St. p. 517,) but is dutiable at the rate of 10 per cent. ad valorem under the provision for "all nondutiable crude minerals, but which have been advanced in value or condition by refining or grinding, or by other process of manufacture, not specially enumerated or provided for in this act," contained in Schedule A (Tariff Ind., New, par. 95) of the same tariff act, (22 U. S. St. p. 494.)

At Law. Action by ———— Wootton, executrix of Edwin H. Wootton, against Daniel Magone, collector of the port of New York, to recover back customs duties. Judgment on verdict for defendant.

Statement by LACOMBE, Circuit Judge:

During the years 1886, 1887, and 1888 the plaintiff's testator, Edwin H. Wootton, imported from France into the United States at the port of New York certain articles which were invoiced as "mastic d'asphalte" and "asphalte en pains," and entered as "asphalte crude." These articles, having been returned by the local appraiser as "crude minerals, advanced by manufacture," were classified for duty at the rate of ten per cent. ad valorem, under the provision for "All nondutiable crude minerals, but which have been advanced in value or condition by refining or grinding, or by other process of manufacture, not specially enumerated or provided for in this act," contained in schedule A (Tariff Ind., New, par. 95) of the tariff act of March 3, 1883, (22 U. S. St. p. 494,) and duty at that rate was exacted thereon by the defendant as collector of customs at that port. Against this classification and this exaction, the plaintiff's testator protested, claiming that these articles were crude asphaltum, and, therefore, free of duty, under the provision for "asphaltum and bitumen, crude," contained in the free list (Tariff Ind., New, par. 643) of the aforesaid tariff act, (22 U. S. St. p. 517.) Thereafter the plaintiff's testator made due appeals to the secretary of the treasury, and, within ninety days after adverse decisions had been made by him thereon, brought this case to recover the duty exacted upon these articles.

Upon the trial it appeared that these articles were bought and sold in the markets of this country under the name of "asphalt mastic," and consisted of loaves or cakes of an asphaltum, to which a natural mineral bitumen had been added; that this asphaltum was a fine oolite stone or carbonate of lime naturally impregnated with from 7 to 10 per cent. of mineral pitch, and was mined or quarried in rough chunks, often called "rock;" that the principal asphaltum mines in Europe were Seyssel, (ain' Mons Gara,) in France, Rayusa, in Italy, (Sicily,) Travers, in Switzerland, and Limmer, in Germany; that the natural mineral bitumen of the kind added was black and viscous, and was gathered in the island of Trinidad, where its chief deposit was found, and in various other parts of the globe; that the asphaltum so mined or quarried as aforesaid was crushed; that the bitumen gathered as aforesaid was put into large melting pots, and the crushed asphaltum emptied in; that this bitumen and this crushed asphaltum were melted and mixed together, and afterwards, for transportation, cast in molds into loaves or cakes of the shape of a short section of a cylinder, constituting the articles of the kind in suit; that such articles, broken up into small pieces, a certain amount of refined bitumen, and from 40 to 50 per cent. of grit or very coarse sand, were boiled together for a certain length of time to a certain degree of heat, and the compound so formed was then taken from the fire, and used for laying sidewalks, cellar floors, roofs, and for other like purposes; that, except in combination with other substances, and after some such manipulation as described, there was no use to which such articles as those in suit could be applied; that articles similar to these in suit, and produced in Germany, in substantially the same way, from asphaltum mined or quarried there and Trinidad bitumen, were worth about half as much again as the value of such asphaltum as mined or quarried and the value of raw Trinidad bitumen taken together. Both sides having rested, defendant's counsel moved the court to direct a verdict for the defendant on the ground that the articles in suit were not crude asphaltum.

Comstock & Brown, (Stephen G. Clarke, of counsel,) for plaintiff.

Edward Mitchell, U. S. Atty., and Thomas Greenwood, Asst. U. S. Atty., for defendant.

LACOMBE, Circuit Judge, (orally.) I am inclined to grant the motion on the ground that the phraseology of the particular paragraph referred to (paragraph 95) is somewhat different from other paragraphs which have in other suits been held inapplicable to articles elsewhere enumerated by reason of the use of general or special words. The tariff act of 1883, taken together, provides, in the first place, (paragraph 215,) that certain crude articles shall pay one rate of duty, and (paragraph 638 and elsewhere in free list) that certain other crude articles shall not pay duty; in some instances by general enumeration, in others by special reference. Then there is a general paragraph, (paragraph 95,) providing that all crude materials which, by reason of the fact that there is no duty provided for them, or that they are on the free list under some general or special name, shall pay a certain rate of duty if they have been advanced in value or condition by refining, grinding, or other process of manufacture. There seems to have been in this case certainly a process of manufacture in the way of boiling; and, if requested, I would leave it to the jury to say if, under the evidence, it has been advanced in value or condition. I am free to say that I do not think there could be any dispute upon the fact that there has been some advance in value, since labor has been put upon it. It is a perfectly fair inference with regard to the French product that there was an advance in value, although no evidence has been offered except as to the German product.

Plaintiff's Counsel. I do not think it is worth while to trouble the jury on that point.

LACOMBE, Circuit Judge. As to the question of an advance in condition, I should leave that to the jury if it were a point to be determined irrespective of value, because an article may be "changed" in condition and yet not "advanced" in condition. If the question of value were entirely out of the case, I would leave it to the jury under a charge that they must be satisfied by the evidence not only that the articles were changed in form, but that the change had been itself an advance. But from the testimony here as to the value of the German article, and from the fact that in the French manufacture both capital and labor had been applied to the raw material, it would seem idle to submit any question as to whether there has been any advance in value.

Plaintiff's Counsel. I claim that what has been done was done for convenience in transportation, and that the mere process of putting it together is not a "manufacture," within the meaning of the act.

LACOMBE, Circuit Judge. I shall rule against you on that question of law, and direct a verdict for the defendant.